Good morning, your honor Bobby for the appellants. Uh, I intend to reserve four minutes of my time for rebuttal. The order of nine class certification, which was entered after only 38 days of discovery and only analyzed typicality should be overturned for two reasons. First, the district court erred in holding that plaintiffs do not satisfy the permissive standard for typicality because they were subject to claim unique defense. Second, the district court erred in failing to permit plaintiff sufficient discovery needed to conduct the rigorous analysis required across certification. As this court held in Hanlon, typicality is a permissive standard, which is satisfied when the representative claims are reasonably coextensive with those of absent class members, they do not need to be substantially identical. In Lozano, this court held that in determining whether typicality is met, the focus should be on the defendant's comment and plaintiff's legal theory, not the injury caused to the plaintiff. Plaintiffs satisfy the typicality standard in this case, because they assert the same causes of action arising from defendant's common course of conduct. Namely, the defendants in this case adopted a class-wide policy accounting for foreign streaming revenues to all class members on the basis of the revenues generated by foreign affiliates. Council, our standard of review is for abuse of discretion, correct? It is not abuse of discretion with respect to rulings of the law and the application of law. And in this case, we believe that the court misapplied the legal standard for typicality. Well, it seems to me that your quarrel is really with the application of the standard, as I understand what the district court was getting at, your client certainly is typical of everyone in subclass three, because it basically defines him, but with respect to subclasses one and two who have written contracts of one kind or another, the issues seem quite distinct. That's what the district court was saying. And so distinct that your client is far away from being typical. So why isn't that an application of the standard rather than a legal principle? Because the court didn't allow us to conduct the discovery necessary to make a determination and develop a record of whether actual distinction occurred. That's a different question. You're now talking about abuse of discretion in denying additional discovery, but I guess what I'm trying to get at is why you contend that there's a legal error that we review in some other fashion than for abuse of discretion. Well, because as a court held in Ellis, deferring factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality. In this instance, the court recognized that the plaintiffs are bringing the same causes of action for breach of contract, fraud, violation of the business code and breach of the implied covenant. They were subject to the same course of conduct. What the district court said was that it was denying typicality because they were subject to unique defenses. That is a narrow exception to the typicality standard that applies when the plaintiffs are truly unique. And an examination of each of these claimed defenses establishes that neither of them were unique to the plaintiffs and neither of them would threaten to be become the focus of the litigation. Wouldn't that whole, all of the litigation for this third group, wouldn't that significantly suck the energy from the first two classes that you proposed? It would not, your honor. They bring the same claims for breach of contract, for violations of the UCL, for fraud, and breach of the implied covenant. They would spend a lot of time establishing the terms of the implied contract in the third group. They would not take a lot of time establishing the terms of the implied contract because the implied contract arises of the identical course of from the representations that were made on class-wide common form royalty statements, which indicated that the royalty payments to these individuals were on the basis of a hundred percent of 50% of a hundred percent of gross receipts. There was no disclosure to any of the class members, either in the first, second, or third category that a defendant was taking off foreign revenues and never reporting them. That's the core common theory of the case. And with respect to the permissive standard on typicality, this court has held in Just Film Inc., in Parsons, that the focus is primarily on the defendant's common course of conduct, a common course of dealing that applies to all class members as there is here, the typicality should be satisfied unless there's something truly unique. And the evidence in this case shows that it is not a unique analysis. And the evidence of that is the way that defendant Warner Brothers engaged in this conduct. It did not go and do a review of the plaintiff's contract and say, oh, well, this contract falls into this category. What it did was it did math updates to its systems that apply to all three of these categories that we've set forth. And it did that because it had determined that the rights and obligations of all three of these categories, including the plaintiff's category, were subject to the same rights, the same course of conduct. I have one question about your position that, because two or three times you said there's a common course of conduct. Is it your position that that alone establishes typicality? Because typicality is only in part about the defendant's conduct. It's also about the nature of the plaintiff and the plaintiff's claims, isn't it? It is. And as I've indicated during this hearing in our papers, the claims are the same. The claims are for breach of contract, violation of the UCL, breach of the implied covenant, and for fraud. So those claims that arise from the same course of conduct are appropriate for the permissive standard under typicality. And going back to the Ellis decision, this court held that deferring factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality. So that's what we're talking about. Deferring factual scenarios resulting in the same claim. The claim is the same for all the plaintiffs and all class members. And it's important to point out that the district court didn't analyze this case under predominance or commonality. It focused on typicality. That's the only element of rule 23 that was analyzed by the district court. And that is a permissive standard. And we've satisfied that standard, not only by the defendant's conduct, but the nature of the claims that are being brought, which are identical. What about the lack of damages? I'm sorry, Judge. No, no, please, please go ahead. What about the lack of damages and the, at least allegations that it's going to take your client 620 years to recoup? So there's two things there. One is the legal issue, which in Just Film Inc, Lozano and Parsons, this court held that a difference in a theory of injury does not defeat typicality as a matter of law. And that's what we're talking about here is a difference in the theory of injury or the damages that were incurred versus someone that is recouped versus unrecouped. There's also the fact that the majority of the class members in this case are unrecouped, meaning they have not reached profits. So they would be in the same category as a named plaintiff. As the Supreme Court held in Amgen, if the class is subject to a fatal similarity rather than a fatal dissimilarity, that issue is appropriate for class adjudication. Whether a injury qualifies is a class issue that applies to most of the class members, it's not unique to the plaintiffs. But this is an injury. But could I ask you to address your claim that the district court abused its discretion in denying you additional discovery? And specifically on the issue we started with about the differences in the contracts, how would more discovery have helped you on that? Well, we received, so there was only 38 days of discovery permitted by the court before class certification. We received, what, 100 contracts that were self-chosen by Warner Brothers seven days before the class certification motion. We didn't have time to analyze them. The other issue there was that- But I mean, I take it, nobody disputes that there are these three different kinds of contracts. You have the kind that doesn't have an express royalty provision. So what more might you learn from discovery that would change the analysis of whether you can be typical of this group of different kinds of contracts? Well, you don't know what you don't know, right? So we would have to review a representative sample that's provided. But the other two things I want to point out, it's not just the contracts that would be resolved by additional discovery. The two unique defenses that claim lack of injury and the unrecoupment, for instance, that's something that could be determined from defendant's records. What percentage of the class members are unrecouped? The other thing is we would be able to determine whether the plaintiff's record is unique by determining the number of artists that fall into that category. So it's not just the contract, it's determining the class composition, which is what the court relied upon in making its class determination. And as this court has held in ABS, and also it is that there needs to be sufficient discovery to conduct a rigorous analysis. This was an incomplete record that was the result of the district's failure to allow us to permit sufficient discovery. And you're down to two minutes. If you'd like to save rebuttal time, you may. I would. Thank you, Your Honor. Thank you. We'll hear from Mr. Commons. Thank you, Your Honors. Good morning. Sean Commons on behalf of Warner Records, Inc. Formerly Warner Bros. Records, Inc. Your Honors, the district court's decision is entitled to deferential review for abuse of discretion and should be affirmed. Unless the court would like me to address the arguments in a different order, I was going to start with typicality and then address the court's order on class certification. If you don't mind, I'd like to ask you about the discovery question first, because it could bear on typicality. If fuller discovery were allowed, I know this is a hypothetical, but suppose discovery disclosed that 91% of the class members were unrecouped and 77% of the class members fell into subcategory three with no express contractual provision. Wouldn't the plaintiff be typical in that situation? And how do we know that that situation doesn't exist? Sure, Your Honor. Happy to answer that. And there's sort of two sort of assumptions or premises within that question. One has to do with that third category of contracts, the contracts that we called sort of the silent contracts. And the issue there is that plaintiff hasn't shown their typical, even of a contract that is silent on all of the critical issues that would have to be resolved here on an applied contract theory. Well, except that the absence of a provision specific to royalties, there may be slight nuances to that, but that presents a particular view. So proceed with the rest of your answer. I will, Your Honor, but just to make sure I'm understanding your comment, which is that any dispute about an applied contract necessarily starts with the express terms of the contract. And what the district court had before it on that particular issue was extensive briefing on a motion of dismiss, where for this particular contract, the parties invoked multiple provisions, multiple terms, multiple definitions to argue about whether or not there would be implied terms. And that's why it's significant that out of the 100 plus contracts, plaintiffs didn't identify one that was typical of them, even for contracts that are silent. Can we go back to my question? What if full discovery showed thousands of contracts just like this one? If it did, Your Honor, we'd still have the same issue, which is that there is a class here as defined that plaintiffs would not be representative of all the people who have a contract that expressly provides for foreign. But what if discovery showed that they were just the tail of the dog and not numerous? Well, I think you're right, Your Honor, under the case law, that if it was one percent or some small percent, but the numbers, the percentages you offered would be a material group of the class. Then change the hypothetical. I mean, since we don't know what discovery that didn't happen would have revealed, I guess that's my question. It just seems possible that discovery, more discovery would have revealed that, in fact, these claims are typical. Because almost everybody's in the same boat, we don't know that. Well, I think we do know that because, of course, you have to accept that even for an implied contract claim, it always does start with the express terms of a contract. You can't decide whether or not there's an implied term without first looking at what the parties did, in fact, agree upon. And that's why even if you have a contract that's silent, if one contract has a different set of definitions that the party would argue off of, notwithstanding the silence on an express term versus an entirely different one. And we've provided many examples. You could have a two-page contract that's silent or a hundred-page contract that's been amended four times. But once again, counsel, we don't know if this exact contract exists thousands of times. You assert that it doesn't, but without looking at all of them, how do you know? How does the court know? Well, I think the way the court would know is that we did produce over a hundred contracts. And if we're getting to the court's core question here, which is whether more discovery should have been permitted, under the court's decision in Davidson, if plaintiffs believed that they motion of some kind with the court to ask for a further continuance, to ask for additional discovery, which they didn't do. Well, they did say in their class certification motion that they thought ruling on class search should be deferred pending discovery. And you responded to that. And the court addressed that in its order. It said it was aware that there was a question of whether there should be more discovery. And it ruled on that. So, I mean, if you're trying to suggest that the issue wasn't preserved, why isn't that enough to have put the court on notice of this issue and to preserve it? It wouldn't be enough, Your Honor, because you have to identify what additional information you need. Making a generic assertion that you would like more discovery, but not explaining how it relates to class certification, wouldn't satisfy a good cause standard. If you took that footnote and the comment in a declaration that was with the moving motion, it would not satisfy Rule 16. And a court would be well within its discretion to say that a party had not demonstrated diligence and not demonstrated a need and good cause to grant additional discovery. And the setting here is the court had twice continued the class certification deadline. And this class certification deadline was occurring 14 months after the case was removed and after discovery had been taken. And there had not been a motion to compel or a motion to continue presented to the court to identify some reason why it needed to postpone it. And plaintiffs could have even, under this court's decision in Davidson and earlier decisions as well, even applied as late as the reply and filed some motion at that time and said, now that we've seen their arguments, Your Honor, it's clear we need additional discovery. We would ask that you continue it. But they didn't make a formal motion. They didn't present a specific argument. It didn't identify anything where the court could say, I see why you need additional discovery. And then again, that's another reason why it's significant. If the plaintiffs had said, as Judge Graber has been raising, well, Your Honor, we've looked at the hundred contracts and we can't find any in here that are like our contract. But we suspect that maybe the defendant is withholding similar contracts. The court could have considered that assertion. You could have presented and argued it and ruled on it. But since they didn't, it can't be an abuse of discretion for the court to have done what, to just proceeded with the motion at that time. And it's the same with the unrecouped status. The difference here is that it's not just that they're unrecouped because there could be many people who are unrecouped. It's that they are unrecouped so significantly that there is no possibility that they will become recouped. And that's not a point they disputed below. And that's why they're not just different from people who are recouped. They're different from even people who are unrecouped and might have a reasonable expectation to become recouped in the future. They are just like they are, in our view, a subset within contracts that are silent. They're also a subset within people who are unrecouped. And again, there's no amount of discovery that's going to fix that issue for them. And it wouldn't be a class of people who will never be owed. The whole purpose of this case was to say that we should be paying people royalties, but it's brought by a person who will never be owed royalties. And you can't have a breach, this nominal damages theory, we can't breach a duty to pay if there will never be a duty to pay. And again, this is a situation where the district court has had before it a Ninth Circuit decision in Aguilera, which was followed by a subsequent Ninth Circuit decision as well, holding that nominal damages would not be available in this circumstance. And so the court appropriately considered, is it fair that the claims of an entire class, including people who are fully recouped and people who have an expectation of being recouped, should rise or fall with someone who undisputedly will never become recouped? And is it appropriate for a class of people whose contracts contain a variety of terms that would give them different and stronger and better claims to have their claims rise and fall based on this particular individual who can't show any similarity between their contract and the contracts of other class members? Judge Miller, it looked like you were about to ask me a question. No, but I guess since you asked, I can't recall the 100 sample contracts that you presented. Was there some, did you make some representation about how you had selected those? What was it and what was it? We selected contracts from multiple decades. We picked contracts from every label, sub-label that was under WBR. So the plaintiff's class doesn't include just Warner Brothers records. It includes its predecessors and its subsidiaries. So we gathered contracts for each decade, at least one contract per label per decade from, I believe, the 1940s or 50s up to the 2000s. That's sort of how we gathered the collection. And we did it based on the original class definition. At the time of class certification, plaintiffs narrowed the class to just people who had California choice of law clauses. And the testimony in the case is there's no way to identify who has a California choice of law clause unless you pull each and every contract and read it. How many contracts are there in total that would fall within the narrowed class or without knowing the California question, how many contracts are involved? Your Honor, I don't know the answer. How many of these specifically have California choice of law clauses? A number of them do because many of the labels were worked out of California. But we're talking about hundreds or thousands of contracts total to look through to determine. It would be thousands, Your Honor. It's a little bit difficult because again, you'd have to then narrow it down to those artists who had music that's been streamed digitally in a foreign country. To follow up on Judge Miller's last question. So was it the defendant's intention that the 100 contracts would be a representative sample or were they picked for, it wasn't exactly sure what reason they were picked. They were selected in an attempt to be representative of how the contracts have evolved over time. Because every label and sub-label might have started with a different contract, which was then as the testimony shows, individually negotiated with each artist. And as you can imagine, contracts in the 1940s might have been two to six pages long. Contracts in the 2000s can be 120 pages or longer. The plaintiff's contract is something like 15 pages long. And depending on the artist, a contract might be amended one to 14 different times over the years. And each of the amendments could be a single page to dozens of pages, to pages long. And so again, by covering different eras and different labels, we were able to provide what we believe was a representative example of how the contracts evolved over time. And was that sampling negotiated with the plaintiffs in response to their Rule 34 request or did you take it upon yourself to do that? We took it upon ourselves. They had asked for every contract that we had ever entered in with anyone. And we objected that that would have been an incredibly enormous burden to produce that volume of documents. And that's why we came up with this approach. And there wasn't an objection. They did not object to it until I believe their reply. They made a comment about it, but prior to that, they had not objected. Your Honor, I did want to address, if I can, a couple other items before I think my time is close, which was that one of the questions, Judge Graber, you raised, which is about this policy or practice, is that somehow just answer the question of whether or not you have typicality. And this court's decision in Sandoval in 2018 answers that question. And the answer is no. That was a case where there was a policy or practice that was being challenged, namely impounding cars without warrants. And the plaintiff tried to argue that it was per se unlawful, and that was enough to establish typicality and proceed with the class. And this court determined, no, you couldn't answer the question without looking at the facts. And it's the same situation here. You can't answer the question of whether or not the practice of how WBR has been paying royalties on foreign digital streaming, whether it complies with the contract or not, without looking at the contract. And that's why Sandoval is a great example of a case where this court affirmed a finding of lack of typicality because the facts led the plaintiff to determine the outcome of the case. And there was no suggestion in Sandoval that somehow the plaintiff was uniquely singular or that the defense that the defendant was raising wouldn't apply to other class members. And similarly, in the state of Alaska versus suburban propane, another example was a proposed class of roughly 1,300 commercial buyers. The class representatives were found not typical because they had superior bargaining power. Again, not that they were somehow unique, but just that they had more bargaining power than many class members. And that could determine whether they had any damages at all, not whether they had, not just the amount of damages. Was I saying out of time? Thank you very much, Your Honors. Thank you. And you have some rebuttal time remaining. Yes, Your Honor. Thank you. Just a couple of points. One, with respect to due diligence on the discovery issue, I just want to go through briefly what we did to address and preserve the issue. First, we entered a detailed stip in order seeking to continue the local rule 23-3, the 90-day discovery limitation, which was in place in the Central District of California at that time. The court rejected that. Prior to the initial deadline of our initial motion for class certification, we filed a motion seeking additional discovery and indicating that the court's order was improper. In response to that motion, the judge issued an OSC saying that there should be 38 days of discovery. We objected to that. We sought additional discovery and the court rejected that as well. So all those things happened. We tried to address the issue. We sought more time. The other is the sample of the contracts. At ER 167, there was testimony that there were 40,000 royalty recipients to WBR. So the hundred contracts that were self-selected by Warner are not representative. And typically when we do accept a sample, we negotiate that with the defendant. It's not just self-selected and they put something out there. This is not the proper way to conduct discovery in a case like this where the defendant has most of the information and the lack of discovery, as we've indicated, affected both of the claimed unique defenses and undermined the court's ability to conduct a proper analysis in this case. I see my time has run out. Thank you, counsel. The case just argued is submitted and we appreciate interesting and helpful arguments from both of you. Thank you. Thank you.
judges: Graber, Hillman, Miller